v. Katz cancellation of the voting  May proceed. Thank you, your honor. Marlon Weiss, may it please the court. This is an appeal from twin summary judgments on injunctive relief and contempt without a hearing on a materially disputed record resulting in a compensatory contempt sanction of $102 million to the FTC based on the   It's something that the FTC will use for a long time on a gross receipts theory. Before getting into the argument, and I think there's numerous that warrant reversal, is that I want to emphasize that this was a legitimate business. These appellants are legitimate business people with deep ties in the Miami community.  I don't want to make your argument for you, but I think you probably want to get into some jurisdictional issues. Yes, Mr. Weiss, I think that would be important. Okay, I want to start with mootness on the contempt side and then the notice of appeal on the on-point litigation. Sure, so as to the mootness, so here we're raising really claims that go to whether the compensatory contempt sanction was punitive rather than compensatory. So like Judge Locke, you were on the Saas case and citing Chaffin, so you can't confuse mootness with the merits. And I think we assert... But there's a big difference in Saas. I mean, here, however you look at it, this thing was paid off and not paid off by your clients. And so what remedy could we possibly give? And we'll get to mootness exceptions in a minute, but just on mootness generally. What remedy could we possibly give to your clients by reversing that particular award here? Well, we're talking about the stain of contempt. And so... Okay, so you agree that at least monetarily we can't do anything for your clients? Monetarily, I think we can talk about in the district court, if this is reversed, we can seek our administrative costs. Because remember, half of the administrative costs of the ultimate sanction of $16 million and change, half of that was postage stamps and receivership costs. And there's authority... But you paid none of it, and we can't give you back any of that money. But we can obtain it as costs from the FTC. You can't. The company could, but you can't, right? You didn't pay a dime. I'm saying to you, let me be clear, I'm talking about your clients. Your clients didn't pay a dime here. Well, we're jointly and severally liable for the entire... 100%, that's true. But someone who's not here and is not seeking relief paid gratuitously, even though they didn't have to, all of this. And so, again, we're just talking about the money side. You may be right on the other thing you talked about. But on the money side, is there anything that we could give back to you if we rule in your favor on the money side? On the money side, if we're not talking about costs, then the answer is no. Okay. But I'm even having trouble on costs understanding that. You may have to explain that to me a little more. How could we give you back costs? We certainly give the company back costs or pull that back for the company, but your clients are not the company. Well, I mean, by virtue of the fact that they were majority shareholders and... I know, but I own stock in Disney. I mean, if they get money back, it doesn't come to me unless they give me a dividend. I mean, it's a different entity. How would you be entitled to that money except if the company decided that it was then going to give money to someone else, which would be a distribution of some sort, not compensation for a reversal, right? Yeah, I mean, you know, you might be right. All right. So let's put that aside. So then the second argument is I'll characterize it as a reputational harm argument, and I think you called it a stain. I've tried to dig deep into this as I can. Is there any case that you can tell me where someone has said that civil contempt finding is a reputational harm or a stain? Two points. First, the answer is yes, and with respect to an attorney in particular. So there's a service case that we cite that's out of the Ninth Circuit. So putting that aside, I think your question is premised on the idea that it is compensatory. And, again, I think that's respectfully the mistake of kind of intermingling the mootness issue, the jurisdictional issue with the merits issue. Even if it's punitive, and, again, you don't have anything, you're not going to get any money back, but even if it is punitive, how is that a reputational harm that's different from any other civil judgment? So, for example, let's take a rear-end collision. You go to a jury trial. A jury finds that you drove your car in a negligent way and injured someone and awarded damages. Let's assume damages were paid by someone else. We can't give any relief on that. Would someone be able to argue to us that the case is not moot because a jury made a finding that I was negligent somehow, and that's a stain on me for my driving record later on? Well, it's not only that. I think the important part, going to your question, is that there's due process concerns at play. So this is a structural error. When you're talking about a punitive sanction and something is deemed punitive, in other words, if we're right as we're asserting on appeal, then you have all types of due process issues because there was no hearing, there was no notice. It may be that there's error here. We're not talking about that, but I'm more asking about if there's an exception to mootness that you're talking about, and that's the one you're relying on, is this what we'll call reputational harm. How is that reputational harm there? How is this different than any other civil judgment where time and again we've said that once something's paid off, that's it. You know, you're done. And that's what distinguishes the punitive sanction from a compensatory sanction. And, you know, when you call reputational harm, I think there's the piece that I want to emphasize, that there's also a due process aspect to it, and we're entitled to due process. And if you have a punitive sanction, that is what precludes it from being moot, is the fact that we can get meaningful relief and we can get retried and our due process rights can be respected. All right. I want to move on, unless either of my colleagues have any questions on that, on the notice of appeal issue, which was brought up very late in the game, and I appreciate your quick and timely response. So here's what I understand happened. Summary judgment was entered on what I'll call the Section 5 claim with regard to your two clients, but not as to others. The district court entered a permanent injunction as to your clients, but not as to the others. And then sometime later, there was a hearing of everything, including on the merits regarding the other Section 5 defendants. The district court found as to some of those other Section 5 defendants that they violated and then extended the injunction as to them and then separately ruled on the contempt stuff. Do I have that right? That sounds about right.  How could that be a final judgment where there's other defendants that have summary judgment was not granted as to them and the case continued as to them? Right. So that would not be a final judgment. The final judgment would be the one that we appeal from. Okay. Well, which one is what I have sort of a separate sort of question, which is. And no one I think really is addresses, which is under Rule 58. Every judgment and amended judgment must be set out in a separate document. Okay. That wasn't done here. There is no separate document. Now, there is now a sort of fix under Rule 4, which allows says that it's because if the district court does not set forth a judgment on a separate document, then judgment is deemed entered 150 days later. Okay. But even if you do 150 days later, I mean, I calculated the time. It's still not a timely notice of appeal, even with the government getting 60 days. How so? So what they said in their jurisdictional letter is that there was an amendment to a portion of a summary judgment order that did not resolve all claims. It didn't even resolve part of the claims. Because as you mentioned, Judge Locke, there was a bunch of other defendants and that still went to trial ultimately. In other words, let's take this as a regular case, a three-defendant case, a straight sort of contract diversity action, three defendants. District court enters summary judgments on defendants 1 and 2, but not as defendant 3. Enters the summary judgment actually as to 1 and 2, in this case an injunction. And then later on, has a trial on number 3. And then at number 3, has the full trial, rules against defendant 3, and then enters judgment as to defendant 3. At that point is when it becomes final, because there's still parties that are still out there and claims that are still out there against parties, such that their finality has not ripened yet? Yes, that is true. And that's what we have here, right? That's what we have here. Right. That, you know, like, I don't want to repeat myself because I'm running out of time. But that, what they claim was the final judgment that we should have appealed from was definitely not a final judgment. It only became final by virtue of the fact that all the judicial labor ended. You could have appealed under 1292. Absolutely. Because it was an injunction. But you chose not to. You chose to wait until it became final, right? Correct. And if you look at the whole purpose of 1291, what would be the point of that? If all the entire body of evidence is the same regarding the summary judgment on the injunction and the contempt issue, we would have filed an appeal, had to litigate all of those issues, the dispute of facts, which, by the way, I'm still prepared to talk about, and then have to do it again, you know, a year, a year and a half later. With your remaining time, why don't you focus on the on-point, your points that you raise with regard to the on-point litigation? Well, okay. So, right. I mean, the on-point, so really there's two facets. You know, you have the contempt, you have the personal, you know. Just focus on the on-point. My on-point, what specifically are you referring to? The Section 5 litigation. The Section 5 claim. Yes. So as to the Section 5 claim, you have the disputes of material fact, I think, are really the easiest thing that I can talk about because the deception that undergirds that Section 5 claim is anything but undisputed. And you've got, you know, just starting with the easy stuff, you have guide sales, 5.5 million sold, and you have only 953 complaints. Well, it seems more than that, though. Yeah, there was other complaints. So if I hear you correctly, I think another way to phrase what you're saying is that there could be multiple reasonable inferences from the same evidence. And I think that's exactly why this needs to be reversed because, yes, you do have evidence on the other side. Everything that they say is evidence of deception, I could argue is not evidence of deception. You have an 80% consumer satisfaction rate by the receiver's own survey. Well, that doesn't mean it's satisfaction. That doesn't mean it's satisfaction. It just means that, you know, 20% haven't complained. But 20% seems a lot of complaints for seems a lot of complaints, especially where the law doesn't require actual confusion, right? It's not 20% complaints. I said 80% satisfaction rate.  Meaning 20% are unsatisfied. Well, if I go to McDonald's, you know, I'd probably have the same satisfaction rate. But, you know, that's not to me. That's not undisputed evidence. By the way, clear and convincing evidence in a contempt backdrop. In the light most favorable to us, you know, they're not even close to meeting that standard on summary judgment in the lower court. I just have a question about Levinson. I understand you're saying that the contempt order shouldn't have applied to him because he was a non-party who was the attorney. I think like holds three different positions within the organization or the company. How is it that he should not be held responsible for knowing and then aiding a betting and if just take the district court's word in a scam? Well, I think, you know, you're assuming the conclusion that the FTC would like you to assume. But here are the facts. Here are the facts. Mr. Levinson, the only rule 65 D requires actual notice. That's a phrase that's used in rule 65. So the only evidence that was unique to Levinson that was not, that was distinct from the co-defendant Eli Rothman, who, by the way, the district judge denied summary judgment on and ultimately directed a verdict in his favor on the same exact evidence barring one thing, which is at some point after the Aquinity lawsuit was settled, Bert and Cass held up a piece of paper in the presence of Levinson and said, I settled my mobile billing lawsuit. And that's the only bit of evidence that would theoretically, according to the FTC, have put Levinson on actual notice. And that is was a general counsel for the company on point. OK. Not the Aquinity. I understand that. But nothing to do with Aquinity. Well, clearly it does, because your clients got a contempt order against them for millions of dollars because of violating the Aquinity. So they're connected. That's what the district court found. And for our argument purposes, but perhaps our rebuttal, you can address this. Thank you, counsel. Thank you. Good morning, your honors. May it please the court. Brad Grossman for the Federal Trade Commission. This is an appeal from two distinct cases on point global in which Mr. Katz and Mr. Levinson are contesting an order holding them liable for violating the FTC Act and imposing permanent juncture injunctive relief and a separate action which was consolidated for purposes of trial holding Mr. Katz and Mr. Levinson in contempt for an earlier injunctive order. Why don't you start with the notice of appeal? I'd like to start with the notice of appeal. So you heard you heard my questions. You heard Judge Lugo's questions. Is is what about the other defendants? Doesn't that take it out of the final of a final order? So so what happened here is docket entry 579 on the on point docket is the district judge's trial verdict in order following a trial at the trial. The district judge adjudicated the liability of all the remaining defendants. There were three of them. Right. Rothman, Sherman and Zangrillo. After trial on the same day that the district court entered that order, he entered an amended permanent injunction, which is on point docket entry 582 docket entry 582 resolved all claims against all parties in the FTC's request for a permanent injunction. There was nothing left to do in the permanent injunction matter. And under Hall versus Hall, and I recognize that we were very late in the game in recognizing this jurisdictional problem. But under Hall versus Hall, you know, but counsel, here's let's back up. There was a summary judgment on with regard to the FTC against all the defendants. The FTC filed a summary judgment with regard to all the defendants on the on point litigation. Correct. OK. As I understand it, in that in the district court's order on summary judgment, the district court granted your summary judgment as to two of the defendants, Mr. Katz and Mr. Levinson, and denied it as to other defendants. That's correct.  And the direct result of that was the entry of an injunction, a permanent injunction as to Mr. Katz and Mr. Levinson. And that injunction was was is that yes. And that was appealable only as an interlocutory. I agree. We're on the same page. But you agree that injunction was just issued as to those two folks. That was in November of 2021. That was before November of 2021. In November of 2021, the case proceeds to a trial and that the trial adjudicates the liability of all the remaining defendants, Mr. Rothman, Mr. Sherman, Mr. Zangrillo. The same day the court enters its verdict in order in docket number 579, the court entered docket number 582, which is the amended permanent injunction. At that point, the liability of every defendant with respect to the FTC Act was determined, and either for each defendant, they were either permanently enjoined or they were exculpated. And I take Judge Lagoa's point that under Rule 58, you might add the 150 days for a separate document. I'm not entirely clear on whether the amended permanent injunction would count as a separate document since it was separate from the verdict in order. But regardless of that, that order, which was the amended permanent injunction, was issued November 16th, 2021. If you add 150 days to November 16th of 2021, that takes you to my math is not good, but I believe that's March. Two months after that, we're still in 2022. The notice of appeal here was not filed until January of 2023. So if each case has to be considered separately, there was nothing left for the district court to do in the 13B proceeding. And if you look at the docket in the on-point matter, all of the substantive docket entries in the on-point matter after docket entry 582 were really with respect to the equinity matter, motion to approve a claims process, receiver reports. Those were all with respect to the contempt matter, which under Hall versus Hall needs to be determined separately. So I think it took us a while to get there, but I think the facts are extremely clear that 582 was the final judgment. And you might add 150 days because the court did not enter a separate document that was literally captioned final judgment. But either way, they don't get close. That doesn't bring us even close to the notice of appeal. All right. Let's talk about mootness. So your opposing counsel really brings up two points that I'd like for you to raise. One is, well, yes, maybe as to the actual compensatory part, but as to costs, those potentially are recoverable somehow. And I'd like for you to address that. And then secondly, this point about an exception to mootness for collateral consequences dealing with the potential for a stain or reputational harm to Mr. Levinson in particular. Absolutely. With regard to your honor's first question, Mr. Katz and Mr. Levinson have no standing to. And as I believe your honor captured it well in your question, there are minority shareholders in this company. They have no standing to raise claims on behalf on behalf of the company. And this court is held in a case called KMS Restaurant Corp. 361 Fed Third to 1321. A shareholder has no standing to raise claims on behalf of a company. The company itself would have to do so. The company has not appealed. What's more, in the district court, the receiver made 14 separate requests for payment out of the receivership estate. Mr. Katz and Mr. Levinson objected not once. Even if Mr. Katz and Mr. Levinson had standing to raise these claims on behalf of the receivership estate, they never preserved any such argument by arguing to the. I don't think it's a standing issue. My question to you is, the question for Moon is simply, can we give meaningful relief to them? If we reverse, can they get something meaningful from that? And so my question is as to costs, do they have any expectation or any ability to be able to recover in any sort of direct non-contingent way the costs that were associated with the distribution plan? They haven't articulated any theory as to how they would recover costs with regard to the receivership. The first they've ever mentioned it throughout the trial or appeals was in their reply brief in response to our moodness argument. They never made any sort of claim. We don't know how they would overcome a sovereign immunity bar. We don't they don't cite what the controlling standard would be for with respect to recovery of costs. I believe the Fifth Circuit has dealt with this issue and said it would require malice or bad faith on behalf of vanity or person who sought the receivership. They don't allege that the FTC is engaged in malice or bad faith. They've never made any such contentions below. And what's more, Mr. Katz and Mr. Levinson, I think, would face an insuperable waiver problem because they asked the district court unequivocally to execute the claims process, notwithstanding the fact that the claims process would incur costs. Not only would the receiver have to undergo an hourly charge, but then the receiver hired a claim, a third process, a third party claims administrator who incurred additional costs on behalf of the receivership estate. So I think that if they were to seek costs before Judge Scola, they would face not only the standing problem, but a waiver problem. I think the Mooner's question is a simpler one than that. If we reversed with the money, would they get any money? No. And where would the money go? In other words, if we reverse and said none of this should have happened, this was all wrong, where would the $13 million go? Is it even recoverable? It's not recoverable. The receiver has already been paid. The claims administrator has already been paid. Every dime in this case has either been given to consumers as compensation because they've been scammed or has been spent in administrative costs by the receiver or the claims administrator. The time to appeal, as we noted in our brief, I think they could have taken an immediate appeal from the claims process at the time, and then we wouldn't be in this predicament. But instead, if we order that the receiver claw back the money in some way because the receiver wasn't entitled to that money to begin with, where would that money go? I don't think that this court could order that. Assuming we could. If the money, if you could, the money would go to the corporations who were not before the court on appeal. Right. In other words, we can't order a corporation who's not here to do something, right? Correct. We can't do that. And under this court's precedent in San Francisco Residence Club, the court can't adjudicate the rights of parties who are not even before the court. So so your honor's analysis, I think, is correct. If I could jump to this question about collateral consequences, assuming your honors have no other questions about the receivership. Well, I guess I just want to know what is the importance then of the joint and several liability? I mean, in this case, as Judge Lux said, you know, there were others who paid the money. But, you know, these appellants were still liable jointly and severally liable. So that means nothing. It turned out to mean nothing because thanks to joint and several liability, Mr. Katz and Mr. Levinson owed zero. And the document that they call a final judgment, which is. Well, they paid zero. They paid zero.  They paid zero. That's correct. But the document that Mr. Katz and Mr. Levinson construes the final judgment here, which is document 666, specifically says judgment is hereby imposed upon the corporate defendants. That's in docket entry 666 for the where the court is confirming the liability amount. It only says that the corporate defendants are liable because, again, Mr. Katz and Mr. Levinson paid nothing. If I if I could address this point about the as Mr. Weiss eloquently called it the stain of contempt, this court is actually and Mr. Katz and Mr. Levinson in the reply brief cite cases from other circuits. But I wanted to flag for this court that this court has actually dealt with questions about appeal ability by a professional where there's been no there's been no sanction, just adverse findings of fact. And the case is is United States versus Rivera. That's 613 Fed third 1046 11th Circuit 2010. And what the court held was we have never held that an appeal of a professional who challenges only a finding of fact that is potentially detrimental to her reputation is justiciable. And that's all we have here from the part of Mr. Levinson speculation that at some point in the future, it might harm his reputation that he was held that that that that he was held in contempt. But as Judge Luck pointed out, a civil contempt judgment, it's not punitive. It's a it's a civil judgment, just like any other. And it falls within the line of precedent that we already cited, such as bailant and Jennifer Matthew. When you have a civil judgment and the codefendants pay the judgment, it's moved regardless of speculation about about about potential professional harm or what have you. There is a narrow line of precedent under which if an attorney is held for, for example, violating the rules of professional conduct, they're sanctioned. They're disqualified from a case and they're they're suggesting some sort of imminent threat that they could be brought before the bar. That is something that would be appealable. And that explains the Second Circuit rulings that Mr. Weiss cited in his reply brief. But that's not the circumstance here. Housing Council number of times said that this is actually punitive, not compensatory. It's not because there's no criminal conviction. This court has held that a criminal when someone is held criminally in contempt, they can take an immediate appeal, even if there is no even if they've already done the time. And the reason for that is simple. Being convicted of a crime can have collateral consequences. For example, if you're convicted of a subsequent crime, that can lead to an addition to your sentence. But here, the only reason why Mr. Weiss claims that the sanction is punitive is because is because they dispute the measure of the sanction. But the money's already gone. So that that argument, they dispute the basis, right? For the sanction. That's where they start. The true. But but Mr. Mr. Weiss claims that the sanction is punitive, not because he would not because Mr. Katz and Mr. I'm not sure how strong the argument is, but I don't think that it's completely unreasonable to say that having a reporting requirement for several years being completely barred from engaging in certain activities. And if you do it again, you're going to be subject to what you just went through is not maybe there's another word for punitive, but it's it's a punishment of some sort in a civil context. I hear your honor. But but it goes back to the to the general principle of law that when there's when multiple defendants are held liable for a civil judgment and one pays the judgment, the others can no longer appeal. And in the equity action, which is the contempt action, the court didn't impose additional restrictions on Mr. Katz or Mr.  I don't remember that Mr. Katz showed and said this is the injunction, and that was the extent of that. That's not true. In the in Mr. Levinson's deposition, he testified that Mr. Katz made him very aware of the proceeding. And then they had a substantive conversation. If this were if this were a wave and run, if, you know, Mr. Katz skateboarded by Mr. Levinson held up a piece of paper and skated away. That wouldn't be we wouldn't be here today. They had a substantive conversation about the order shortly after it was entered into. And then in Mr. Mr. Katz's compliance report, he identified, I believe, at least four to six email communications that he had with Mr. Levinson about the about the substance of the order. Mr. Levinson later deny that he, quote, not review the contents of the order and did not see a copy of the injunction. The reason why 65 D2 exists the way it does is to prevent deliberate ignorance of an injunction. The dispositive fact in this case is that Mr. Levinson was aware of the injunction. He knew that Mr. Katz was under order in an FTC consumer protection case. He was not free when he subsequently became general counsel of on point global. And as he said, head of determining its compliance culture, he was not free to simply ignore a known order. And that's not even a question of fact. That's why rule 65 is structured the way it is. Deliberate indifference. Is not an excuse and civil contempt. The only issue is compliance. As this court said in legend one, I see I'm over my time. I may finish my sentence. He is counsel. The only the only issue in civil contempt is compliance. And the court does not probe the subjective mental state of the defendant in a civil contempt case. Thank you. Thank you. So council says that there were substantive conversations about the order, and I hate to say this, but it's not true. It's not true. If you look at the case site that they do and that they cite in the answer brief, you'll see that the deposition transcript doesn't say that they had substantive conversations about the order. Here's how I understand the record and correct me if I'm wrong. You know better than I do that Mr. Levinson in his deposition testified that he was aware of the order when it was entered and saw it, quote, when it got resolved and when it got entered into. That's exactly right. Right. And then Mr. Katz, his attorney confirmed as part of the what your opposing counsel just talking about that there was a verbal conversation with Mr. Levinson, quote, regarding the substance of the order and or the settlement of the case. Right. And then Mr. Levinson comes back and I think it's an affidavit of some sort and clarifies that, quote, that he did not, quote, review the contents of the order and, quote, did not see a copy of the injunction. Is that the state of the record? Yes. Yes, that is. And that language, substance and or, and that disjunctive language, that is the same language that affected also that comes from the Katz, his disclosure to the FTC.  That's that same. Compliance disclosure. Compliance disclosure is the same phrase that is used and that is the same phrase that the district judge specifically found insufficient as to Eli Rothman. Well, whether it did or didn't, is that not enough of if you put that together, is that not enough sufficient evidence for the district court to have found notice in the summary contempt proceeding? No. Here's why, because that's kind of a fuzzy statement that subsequently clarified in his affidavit. Well, the clarification is actually very interesting. What it says is that I did not review the contents of the order, meaning I didn't look at it itself and I didn't see a copy of the  I actually never saw a copy of it, but it doesn't dispute that Katz had a conversation with him about the substance of the order, does it? The substance of the fact of the mobile billing dispute, not of the injunction. Well, it says the substance of the order and the settlement of the case. I mean, that is Mr. Katz's attorney, his compliance statement, is it not? Well, you know, I'm looking at the Aquinity Docket Entry 178-34 at page 2. What I say in response is that you have different bits of information. It is at best unclear, and that is exactly why you have to have an evidentiary contempt hearing in a contempt context where this circuit has specifically said you need to have a hearing in contempt where there's any dispute of fact because it's a due process issue. That is a liberty that Mr. Levinson didn't have and that he should have had. And for the same reason that the district judge ultimately directed a verdict in favor of Rothman when he saw him at trial, he saw him testify. Those are the same questions and lines of inquiry that could have been explored during a live hearing, and the district judge could have made a determination of who's credible, who's not credible, what was the scope of the notice. But the fact that he's an attorney and he was general counsel of one of the companies, you know, I think makes this even more, his burden maybe a little stronger because, again, he was responsible for legal compliance, which arguably would include knowledge of any other orders out there in the universe that might impact the scope of their operations. Well, I think I want to be crystal clear that Levinson was not Aquinity's counsel, had absolutely nothing to do with it. I understand that. But putting that aside. But not aside. The fact that he, that it was the Aquinity conduct that supported or that order that supported this contempt and sanctions, again, I'm just asking whether or not there is any kind of distinction to be made given the fact that he was an attorney. I would direct you, Your Honor, to the ADT case that we cite in the brief from the circuit where this court specifically held that there's no actual notice automatically imputed from the former CEO to a successor entity following an accident. Yeah, they bought an ADT, didn't they buy out the company?  So that's also, this is a newly constructed company that was still subject, the behavior was still subject to the prior lawsuit. That's all I'm just trying to suss out is whether or not his status as an attorney in any way might take him out of the regular person role. I think actual notice means actual notice. And I think ADT is clear that there's, it's highly inferential and highly circumstantial. And it requires not just something that we might assume, well, if one successor entity purchases another entity, they automatically have notice. This court said no. So it's more than that. Privity is not enough. No, I understand that. And I'm just highlighting, I think there's a factual distinction in ADT that it's not enough.